# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

KARI L.D. FISHER, *et al.*,

    *Plaintiffs*,

  v.

PGCPS BOARD OF EDUCATION, *et al.*,

    *Defendants*

Case No. 23-cv-1693-ABA

## MEMORANDUM OPINION

Plaintiff K.F. attended the Prince George's County Public Schools and graduated in June 2022. After K.F. graduated, her mother, Plaintiff Kari Fisher (together with K.F., "Plaintiffs"), filed a complaint with the Maryland Office of Administrative Hearings under the Individuals with Disabilities Education Act, claiming that K.F. had been denied a free appropriate public education (FAPE), and that K.F. should not have been permitted to graduate. The Administrative Law Judge (ALJ) concluded that K.F.'s graduation rendered all of her claims moot. Plaintiffs sought judicial review in this Court. For the reasons stated below, the ALJ's findings of fact were regularly made, and nearly all of the ALJ's conclusions of law were correct. The sole exception is that, with respect to Plaintiffs' claim that K.F. was denied a FAPE during a period of time before her graduation, and insofar as Plaintiffs specifically seek compensatory education as a remedy based on that subset of Plaintiffs' claims, K.F.'s graduation did not necessarily render moot that specific aspect of Plaintiffs' claims. The Court thus will remand the case to the Office of Administrative Hearings for further proceedings consistent with this opinion. Other motions, including Plaintiffs' motion to disqualify Defendants' counsel, will be denied herein and other motions will be decided in a separate opinion.

## I.    BACKGROUND

Plaintiffs contend that Defendants denied Student K.F.'s rights under the IDEA (referred to herein as the "IDEA claims") and that the ALJ's decision dismissing Plaintiffs' due process complaint was erroneous. *See, e.g.*, ECF No. 127 at 2. In the course of amending their complaint, Plaintiffs added three additional claims (referred to herein as the "non-IDEA claims"). In addition to these claims, the parties have filed numerous motions related to the proceedings in this case. This memorandum opinion primarily addresses the IDEA claims.[1]

### A.    Procedural History

This case already has a lengthy procedural history; the original complaint was filed in the Maryland Office of Administrative Hearings (OAH) in May 2022 and the civil complaint was filed in this court in June 2023. ECF No. 1. Plaintiffs filed an initial complaint, ECF No. 1 (filed June 2023), an amended complaint, ECF No. 82 (filed May 2024), and a second amended complaint (ECF No. 107, filed October 2024). Although some of the factual allegations supporting the non-IDEA claims appeared in the original complaint, that complaint did not enumerate separate counts, so the distinction between the IDEA and non-IDEA counts was unclear. The second amended complaint,

---

[1] There are other pending motions in this case, including cross-motions to disqualify opposing counsel, ECF Nos. 124 ("Motion to Disqualify Kari Fisher as Counsel to K.F.") and 136 ("Motion to Disqualify Jeffrey Krew as Counsel"), a motion for leave to file a sur-reply, ECF No. 126, and motions seeking sanctions against defendants, ECF Nos. 125, 138. The Court will herein resolve the motion to disqualify Mr. Krew, *see* section III.B *infra*, and the motion to file a sur-reply, *see* footnote 3 *infra*, and reserve judgment on the remaining motions until the upcoming hearing on August 25, 2025. *See* ECF No. 149.

which is the operative complaint here, clarified the scope of Plaintiffs' non-IDEA claims and added factual allegations for those claims. *See, e.g.*, ECF No. 107 ¶¶ 347, 351.

Plaintiffs are student K.F.[2] and her mother, Kari Fisher. Plaintiffs were originally represented by an attorney, *see* ECF No. 115-1 ¶ 4, but Ms. Fisher represented herself and her daughter in the OAH proceeding beginning in August 2022. *See id.* at ¶¶ 9, 13. In this litigation, Ms. Fisher filed the complaint *pro se*, *see* ECF No. 1 at 73, but she was sworn into the bar of this court during the pendency of this litigation. *See* ECF No. 81 at 7. Defendants are the Prince George's County Public Schools (PGCPS) Board of Education; Trinell Bowman, PGCPS Special Education Director; and Millard House, II, PGCPS superintendent. ECF No. 107 ¶¶ 7–9.

In January of this year, the Court resolved some outstanding issues in the case and set a briefing schedule to address the remaining issues. *See* ECF No. 115. The Court ruled that there would be no further discovery on the IDEA claims and ordered Plaintiffs to file a brief about reversal or vacatur of the Administrative Law Judge's summary disposition based on the existing record by February 20, 2025. *Id.* at 8, 11.

Plaintiffs did not file a brief by that date. Defendants later filed a motion to dismiss the IDEA claims, noting that Plaintiffs failed to file a timely brief or request an extension. ECF No. 118 at 2 (citing Fed. R. Civ. P. 41(b)). Plaintiffs then filed a motion seeking to modify the briefing schedule and stay Defendants' motion to dismiss the IDEA claims (*i.e.*, ECF No. 118). ECF No. 119. The Court denied the request to stay the

---

[2] Due to the sensitive nature of some of the allegations with respect to the non-IDEA claims, and the fact that K.F. was a minor when the original complaint was filed with the OAH, the Court has allowed Plaintiff K.F. to proceed using initials, at least at this time. *See* ECF No. 115 at 11 (ordering the continued use of initials for K.F.).

Defendants' motion to dismiss but modified the briefing schedule with a brief extension to allow Plaintiffs to file their brief. ECF No. 122. The briefing then proceeded on schedule; Plaintiffs filed their brief to reverse or vacate the summary disposition, ECF No. 127, Defendants filed an opposition brief and motion for summary judgment on the IDEA counts, ECF No. 130, and Plaintiffs filed a reply, ECF No. 135.

Briefing also proceeded in parallel on Defendants' motion to dismiss for Plaintiffs' failure to follow the Court's original briefing schedule. *See* ECF No. 123 (Plaintiffs' opposition brief), ECF No. 124 (Defendants' reply brief).[3]

### B.    Factual Background

The facts below are based on the ALJ's finding of facts, which the Court must treat as *prima facie* correct if they were "made in a regular manner and with evidentiary support," *Doyle v. Arlington Cnty. Sch. Bd.*, 953 F.2d 100, 105 (4th Cir. 1991), which as explained below the Court finds that they were. *See* § III.A.i, *infra*.

### 1.    K.F.'s educational history

K.F. enrolled as a student at Northwestern High School ("Northwestern"), a PGCPS school, in 2018. ECF No. 115-1 ¶¶ 18, 19. Throughout her time at Northwestern, she received special education services as part of an IEP for autism and several related

---

[3] Plaintiffs sought to file a sur-reply in response to Defendants' reply brief on the motion to dismiss. *See* ECF No. 126. Defendants' reply brief included a "Motion to Disqualify Kari Fisher as Counsel to K.F." *See* ECF No. 124. To the extent Plaintiffs seek additional briefing on the IDEA claims, the Court will deny Plaintiffs' motion for leave to file a sur-reply as moot because the Court is resolving those claims on the merits, rather than based on Defendants' failure to follow the briefing schedule. *See* section III.A *infra*. To the extent Plaintiffs seek to respond to the Motion to Disqualify, that request is moot, as Plaintiff has responded on that issue: ECF No. 135 at 9–17.

disabilities, including intellectual impairment, anxiety order, and executive function disorder. *Id.* ¶¶ 20.

To receive a regular high school diploma, K.F. needed to complete 21 credit hours, including 18 required credits in certain subjects—four English credits, three math credits, three lab science credits, three social studies credits, two world language/elective credits, and three credits covering other subjects (*i.e.*, fine arts, physical education, health education, and technology education). *Id.* ¶¶ 23, 25, 27, 29, 31, 33. K.F. was also required to complete 24 hours of community service and pass Maryland Comprehensive Assessments in certain subjects. *Id.* ¶¶ 27, 36. *See also id.* at 22-23 (outlining credit requirements for Maryland high school graduation) (citing Md. Code Regs. 13A.03.02).

K.F. met with a school counselor in March 2022 to review graduation requirements. *Id.* ¶ 22. As of that date, she had completed all the required credits noted above except one English credit and a physical education course, which were in progress at the time, but had only completed 1.5 community service hours. *Id.* ¶¶ 24, 32, 36.

In May 2022, Principal Carlene Murray certified that K.F. had met all the graduation requirements, including community service hours and statewide assessments. *Id.* ¶ 43; *id.* at 29. K.F.'s Student Report Card indicated that she had earned a total of 36.5 credits and had high grades, with mostly As and two Bs and a cumulative grade point average of 3.959. *Id.* ¶¶ 40–42. K.F. participated in Northwestern's graduation ceremony on June 2, 2022 and received a regular high school diploma. *Id.* ¶¶ 29, 44.

### 2.    The IDEA Due Process Complaint and Hearing

On May 10, 2022, a few weeks before K.F.'s graduation, Ms. Fisher, on behalf of herself and K.F., filed a due process complaint with PGCPS to review the provision of a FAPE under the IDEA. *See* ECF No. 115-1 at 2. In late August 2022, Ms. Fisher withdrew the complaint, which was scheduled for a merits hearing a few days later. *Id.* On August 31—nearly three months after K.F.'s graduation—Plaintiffs filed a new due process complaint with PGCPS. *Id.* Plaintiffs then filed an amended complaint on October 18, 2022, *id.* at 3 n.6, and later filed a motion for leave to file another amended complaint ("the December Amended Complaint"). The ALJ granted the leave to file the amended complaint on January 13, 2023. *Id.* at 3; *see also* Jan. 23, 2023 Hearing Transcript at 8:6-10.

PGCPS sought dismissal or a summary decision in its favor on two bases: (1) that Plaintiffs' withdrawal of the first complaint was in bad faith and (2) the case was now moot because she had graduated high school with a full diploma. ECF No. 115-1 at 3.

On January 27 and 30, 2023, ALJ Daniel Andrews held a hearing on PGCPS's Motion to Dismiss or for Summary Decision. *Id.* At the hearing, PGCPS presented testimony from Kenneth Barton, a school counselor at Northwestern. *Id.* at 4. Mr. Barton testified about state and PGCPS graduation requirements and K.F.'s progress towards those requirements. Jan. 27, 2023 Hearing Transcript at 23-28, 35-37. Mr. Barton, who was responsible for ensuring seniors with whom he worked were on track to graduate, testified that he met with K.F., who was accompanied by a student aide, on March 25, 2022. *Id.* at 35, 46-47. He testified that he reviewed a Graduation Notification Agreement with K.F. and that, at the time, K.F. was finishing two required classes and needed 22.5 more hours of community service. *Id.* at 29, 35, 40.

Mr. Barton also testified that the school principal must sign a Student Report Card 3 (SRC3) to certify that the student has met all graduation requirements and is eligible for a diploma. *Id.* at 61. He testified that Principal Murray certified that K.F. had met all graduation requirements by signing her SRC3 and that K.F. had earned 36.5 credits, well beyond the 21 credits required. *Id.* at 61-63. Mr. Barton also testified that, according to K.F.'s academic transcript, she had met all MSDE graduation requirements. *Id.* at 67, 71.

Ms. Fisher testified on behalf of herself and K.F. *See id.* at 110.[4] Ms. Fisher spoke about K.F.'s medical conditions, stating that K.F. has autism, intellectual impairment, mixed express receptive language disorder, executive dysfunction disorder, anxiety disorder, and a specific impairment with respect to reading. *Id.* at 97. She contended that K.F. reads on a first-grade level and does not have the comprehension or skills necessary for a high school diploma. *Id.* at 97, 112-13. During her testimony, Ms. Fisher appeared to acknowledge that K.F. met the graduation requirements, but contended that K.F. has not shown meaningful progress and should not have been on a diploma track. *Id.* at 32; Jan. 27, 2023 Hearing Transcript at 117:17–19 ("Did she graduate? Did she '[check the] boxes'? Yes. But did she have any of the skills commensurate [with the diploma]? No.").

---

[4] Because Ms. Fisher filled a unique role of both lawyer and witness at the administrative hearing, at times the distinction between argument and testimony became unclear. *See, e.g.*, January 27, 2023 Hearing Transcript at 226:7–11 (Judge Andrews: . . . "[Ms. Fisher is] kind of a hybrid [attorney and witness] in a very unusual fashion . . . it does create a little bit of a challenge in managing a hearing if we just run into a big narrative."). Ms. Fisher made some of these statements before being sworn in as a witness, but ALJ Andrews considered their content in his ruling. *See, e.g.*, ECF No. 115-1 at 31; Jan. 27, 2023 Hearing Transcript at 97: 21–25.

In total, ALJ Andrews considered 59 exhibits from PGCPS and Ms. Fisher. *See*
ECF No. 115-1 at 49–53.[5] Among those exhibits were three evaluations of K.F.: a speech
and language evaluation conducted by a speech language pathologist in April 2021, a
psycho-educational evaluation conducted in June 2021, and a neuropsychological
evaluation conducted by a licensed psychologist in August 2022. *Id.* at 32–33; Parent
Hearing Exhibits 2, 3, & 10. These evaluations indicated that K.F. was "struggling
with . . . reading comprehension," and, in addition to many strengths, has issues with
"higher-order thinking, language, social and communication skills, problem-solving,
and executive functioning." *Id.* at 32, 34; Parent Hearing Exhibit 2 at 9; Parent Hearing
Exhibit 10 at 26. These evaluations were cited and quoted in the ALJ's ruling. ECF No.
115-1 at 32, 34. ALJ Andrews also admitted a PGCPS grading policy that stated, in
relevant part, that students shall receive a minimum grade of 50% when they
demonstrate a good faith effort. *See* Jan. 27, 2023 Hearing Transcript at 188–92; *see
also* Parent Hearing Exhibit 19 (grading policy).

### 3.    The ALJ's Ruling

On February 23, 2023, ALJ Andrews issued a 45-page ruling on PGCPS's Motion
to Dismiss or for Summary Decision. *See* ECF No. 115-1.[6] The ALJ found that PGCPS
was not entitled to summary decision based on Plaintiffs' withdrawal of the original May

---

[5] An additional 19 exhibits were identified but not admitted during the hearing. *See* ECF
No. 115-1 at 52–54.

[6] The ALJ chose to treat the analysis as one for summary decision, rather than as one for
dismissal, because he considered exhibits beyond the initial pleading. ECF No. 115-1 at
14 (citing Md. Code Regs. 28.02.01.12(D)).

2022 complaint, but was entitled to summary decision with respect to all of Plaintiffs' claims based on K.F.'s receipt of a regular high school diploma. *Id*. at 15.

The ALJ determined that there was no dispute of material fact as to whether K.F. met Maryland's requirements for a high school diploma. ECF No. 115-1 at 46 (citing Md. Code Regs. 28.02.01.12D, 13A.03.02.03, 13A.03.05, 13A.03.06, 13A.03.09). The ALJ specifically considered Plaintiffs' arguments, and the evidence they pointed to in support, that K.F. did not meet the Maryland Comprehensive Assessments Program (MCAP) requirement or the community service requirement. The ALJ found that there was no dispute that K.F. had completed the courses that a student is required to complete prior to the MCAP assessments. *Id*. ¶¶ 37–38; *id*. at 41. He noted that Maryland regulations only require a principal to certify that a student "met all assessment requirements" (which includes passing all MCAP assessments) and, therefore, a specific notation that K.F. took the MCAP assessments in 2021 or 2022 was not required. ECF No. 115-1 at 41 (citing 13A.03.02.06E (1) and (2)); *see also* Md. Code Regs. 13A.03.02.06C ("A school system shall state on the student's performance report card *only* that the student *has or has not* met all assessment requirements," meaning "taking all [MCAP] Assessments") (emphasis added).[7]

Likewise, ALJ Andrews concluded there was no dispute that K.F. had met the graduation requirement regarding community service hours. It was undisputed that

---

[7] The ALJ also noted that the regulations provide an exception to the 2020-2021 and 2021-2022 school years where a student meets the assessment requirement if the student has passed the associated courses and "takes . . . the [MCAP assessment] aligned with the course." ECF No. 115-1 at 41; Md. Code Regs. 13A.03.02.06D. So for those school years, completing the required courses and taking, but not necessarily passing, the corresponding MCAP assessments was sufficient meet the assessment requirement.

PGCPS has a program that allows students to complete community service hours during the school day. ECF No. 115-1 at 42. PGCPS's exhibits demonstrated that K.F. completed more than the required 24 hours, *see* School Hearing Exhibit 3 (K.F.'s SRC3, indicating that she completed 54 community service hours in the 2022 school year), and the ALJ found that Ms. Fisher did not dispute that fact. ECF No. 115-1 at 42. The ALJ therefore determined that there was no genuine dispute of material fact as to the whether K.F. met all graduation requirements—including the MCAP assessments and community service hours—because Principal Murray signed K.F.'s SR3 certifying that K.F. met all assessment requirements, which is all that the regulation requires. ECF No. 115-1 at 41; *see also* School Hearing Exhibit 3 (K.F.'s SRC3), Md. Code Regs. 13A.03.02.06C. The ALJ found Ms. Fisher's evidence and arguments about the school district's grading policy (*i.e.*, alleged "grade fraud") to be "factually and legally irrelevant." ECF No. 115-1 at 43.

The ALJ then concluded as a matter of law that K.F. is no longer entitled to a FAPE because she graduated with a full high school diploma. ECF No. 115-1 at 46; *see also id*. at 24 ("Under the IDEA, the obligation to make a FAPE available to all children with disabilities does not apply to children with disabilities who have graduated from high school with a regular high school diploma.") (citing 34 C.F.R. § 300.102(a)(3)(i)); *id*. at 24–27 (citing *T.S. v. Indep. Sch. Dist. No. 54*, 265 F.3d 1090, 1096 (10th Cir. 2001)).

Based on these conclusions of law, the ALJ granted PGCPS's Motion to Dismiss or for Summary Decision and dismissed the due process complaint. *Id*. at 46. In so doing, the ALJ dismissed Plaintiffs' claim not only insofar as Plaintiffs sought continued provision of a FAPE, but also insofar as Plaintiffs sought compensatory education based

on the school district's alleged *past* violations of the IDEA. In other words, Plaintiffs had requested that the school district be ordered to continue to provide K.F. a FAPE *notwithstanding* her graduation. As to that claim, as explained below, the ALJ did not err in granting the school district summary decision, because K.F. was eligible to graduate and her graduation disentitled her to continued provision of a FAPE.

But in granting the school district's request for summary decision in its entirety, the ALJ also dismissed Plaintiffs' claim insofar as Plaintiffs had sought *compensatory education* based on their claim that *before* K.F.'s graduation she had been denied a FAPE. As explained below, the fact that K.F. graduated, although extinguishing her right to continued provision of a FAPE, did not necessarily render moot her claim for compensatory education if the school district had failed to provide her with a FAPE before she graduated. The Court makes no findings one way or the other on whether there were any such pre-graduation violations, or whether, even if there were such violations, K.F. would be entitled to any compensatory education services. But as explained below, the fact that K.F. graduated did not *necessarily* mean that she could no longer pursue such a claim.

## II.    STANDARD OF REVIEW

A district court's review of IDEA claims is governed by the IDEA itself. "[T]he IDEA authorizes any party aggrieved by the hearing officer's determination to file a civil suit in federal court." *G.M. by E.P. v. Barnes*, 114 F.4th 323, 330 (4th Cir. 2024) (citing 20 U.S.C. § 1415(i)(2)(A)). An important distinction is that "an action filed in federal district court pursuant to the IDEA 'is an original civil action, not an appeal from a state administrative agency.'" *Charlotte-Mecklenburg Cnty. Bd. of Educ. v. Brady*, 66 F.4th 205, 211 (4th Cir. 2023) (quoting *Johnson v. Charlotte-Mecklenburg Schs. Bd. of Educ.*,

20 F.4th 835, 844 (4th Cir. 2021)). The district court, therefore, conducts a "modified de novo review," in which it conducts an independent review while "giving due weight to the underlying administrative proceedings." *Id.* (quoting *R.F. v. Cecil Cnty. Pub. Schs.*, 919 F.3d 237, 244 (4th Cir. 2019)). Under this standard, a hearing officer's factual findings are entitled to a presumption of correctness when "the findings were 'regularly made.'" *County Sch. Bd. of Henrico Cnty., Va. v. Z.P. ex rel. R.P.*, 399 F.3d 298, 305 (4th Cir. 2005). A decision is not "regularly made" only if the process for reaching them is "far from the accepted norm of a fact-finding process." *Id.* (quoting *Doyle v. Arlington Cnty. Sch. Bd.*, 953 F.2d 100, 104 (4th Cir. 1991)). If a reviewing court fails to adhere to the findings of fact from the administrative proceedings, the court "is obligated to explain why." *M.M.*, 303 F.3d at 531. Regardless of whether the Court relies on the ALJ's findings, the burden of proof is on the party seeking relief under the IDEA, and a preponderance of the evidence standard applies. *See G.M.*, 114 F.4th at 334; 20 U.S.C. § 1415(i)(2)(c).

In an IDEA case challenging an administrative officer's opinion, as here, the standard rules of summary judgment apply. *Alexis v. Bd. of Educ. for Balt. Cnty. Pub. Schs.*, 286 F. Supp. 2d 551, 556 (D. Md. 2003). The Court draws its own legal conclusions *de novo*. *See Doyle*, 953 F.2d at 105 (explaining that "*findings of fact* by the hearing officers in cases such as these are entitled to be considered *prima facie* correct, akin to the traditional sense of permitting a result to be based on such fact-finding, but not requiring it") (emphasis added); *see also Alexis v. Bd. of Educ. for Balt. Cnty. Pub. Schs.*, 286 F. Supp. 2d 551, 556 (D. Md. 2003). A party moving for summary judgment is only entitled to summary judgment if "there is no genuine dispute as to any material

fact" and the movant is "entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a).

## III.    DISCUSSION

### A.    Plaintiffs' IDEA claims

As noted above, there are two sets of briefing that relate to disposition of the IDEA claims. Defendants moved to dismiss the IDEA claims based on Plaintiffs' failure to comply with the Court's briefing schedule, ECF No. 118, and the parties both moved for judgment in their favor on the merits. *See* ECF Nos. 127 (Plaintiff's motion to reverse or vacate the ALJ's decision on the IDEA counts) & 130 (Defendants' motion for summary judgment on the IDEA counts). For the reasons outlined below, the Court will decide the disposition of the IDEA claims on the merits.

Defendants also moved to dismiss the IDEA counts based on Rule 41(b), which governs involuntary dismissal for failure to comply with a court order. ECF No. 118 at 2 (citing Fed. R. Civ. P. 41(b). Dismissal is a "harsh sanction" that "should be resorted to only in extreme cases." *McCargo v. Hedrick*, 545 F.2d 393, 396 (4th Cir. 1976) (quoting *Dyotherm Corp. v. Turbo Mach. Co.*, 392 F.2d 146, 149 (3d Cir. 1968) for second quotation). The Court must consider four factors to determine whether dismissal is appropriate as a sanction: the degree of plaintiffs' personal responsibility, the amount of prejudice to the defendant caused by the delay, whether there is a drawn-out history of delays, and the availability of a sanction less drastic than dismissal. *Id*. Although in this case the factors might support dismissal, the Court in its discretion will choose to address the IDEA counts on their merits. *See Reizakis v. Loy*, 490 F.2d 1132, 1135 (4th Cir. 1974) (holding that, under 41(b), courts must weigh the importance of preventing delays against the "sound public policy of deciding cases on their merits").

Plaintiffs contend that the ALJ's decision should be reversed or vacated on two general bases: (1) that the factual findings were not regularly made and, therefore, should not be relied upon by this Court and (2) that the ALJ's decision was based on legal error because he applied incorrect legal standards. *See* ECF No. 127 at 2. As explained below, the Court finds that the ALJ's findings were regularly made. And in large part, the ALJ's legal conclusions were correct, including that K.F. met Maryland's requirements to receive a regular high school diploma. But conducting its own independent review, *see Brady*, 66 F.4th at 211, the Court finds that the ALJ's conclusion of law that Plaintiffs' claim for compensatory educational services was moot based on K.F.'s graduation was incorrect. The Court will therefore grant in part and deny in part Defendants' motion for summary judgment, and remand the IDEA claims for compensatory education only to the Maryland Office of Administrative Hearings for further proceedings.

### 1.    The ALJ's factual findings were regularly made.

The Court must first determine whether the ALJ's factual findings were "regularly made" such that the Court should treat those findings as *prima facie* correct. *See Doyle*, 953 F.2d at 105. In assessing whether ALJ findings are "regularly made," a court "focuses on the *process* through which the findings were made," rather than the results of the process. *G.M.*, 114 F.4th at 334 (internal quotation marks omitted). Here, Plaintiffs allege that the findings of fact were not regularly made. ECF No. 127 ¶ 60. Defendants maintain that the factual findings were regularly made because they were supported by evidence from the hearing and detailed in the opinion supporting his ruling. ECF No. 130 at 10. The Court finds that the ALJ's findings were regularly made

because the process "was well within the accepted norm of a fact-finding process." *G.M.*, 114 F.4th at 334–35.

Plaintiffs' objections to the procedures prior to and during the hearing are myriad and are largely conclusory. For example, Plaintiffs contend the ALJ:

- "fail[ed] to conduct [a] fair, competent and impartial due process hearing," ECF No. 127 ¶ 57;
- acted with "impermissible  . . . bias with respect to Plaintiffs' protected traits, particularly age, gender, race, and disability related to K.F., a then 18-year old female with autism and other disabilities and Kari Fisher," *id.* ¶¶ 62, 63;
- was prejudiced by Defendants' "intentional actions to discredit, disparage, and malign Plaintiffs [and] harassment, discrimination, and retaliation," *id.* ¶ 66;
- did not allow them to present their case at the hearing, *id.* ¶¶ 64, 79;
- made decisions based on "impermissible concern for his docket and the time the due process hearing would take," *id.* at ¶ 66, *see also id.* at ¶ 71 (defense counsel commented during the motions hearing "the Plaintiffs' case was going to break the record for the longest trial in OAH history in an attempt to bias the ALJ");
- did not allow them to engage in discovery, *id.* ¶¶ 67, 68, 76;
- did not follow "applicable and on point guidance" regarding "due process and other protection," *id.* ¶ 67;
- failed to give deference to certain materials, including a U.S. Department of Education Office of Special Education Programs policy letter and federal education regulations, *id.* ¶¶ 69, 70;
- erred by denying Plaintiffs an impartial hearing for the December Amended Complaint, *id.* at ¶ 70;
- failed to require PGCPS to respond to Plaintiffs' August 2022 complaint and the December Amended Complaint prior to the motions hearing, *id.* ¶ 74;
- allowed PGCPS to file a Motion to Dismiss although it was time-barred, *id.* ¶ 72, *id.* at 18 n.10;
- held the hearing although Plaintiffs were "unable to subpoena witnesses" or call witnesses, *id.* ¶¶ 73, 79;
- failed to give the parties "adequate notice of what documents could be submitted for the Motions Hearing," *id.* ¶ 53;

- failed to acknowledge that PGCPS issued K.F.'s diploma after Plaintiffs had filed for a "stay put" order on May 10, 2022, *id.* at ¶ 75;
- excluded "relevant data and assessments from the record," *id.* ¶¶ 63, 77;
- did not provide the parties sufficient notice to review and respond to documents that were part of the motions hearing, *id.* at ¶ 78; and
- "abruptly chang[ed]" the scheduled dates for the motions hearing, which "impaired [Plaintiffs'] ability to secure necessary witnesses," *id.* ¶¶ 92, 93;

As stated above, this Court's determination about whether findings were "regularly made" is focused on the process by which those findings were reached. *G.M.*, 114 F.4th at 334. The Court, therefore, does not consider the findings themselves in its analysis of whether the findings were "regularly made." *See, e.g.*, ECF No. 127 at 19 (contending that "[t]he ALJ erred by not acknowledging that Defendants had unlawfully issued a high school diploma"). Furthermore, the matter before this Court is "not an appeal from a state administrative agency," but an "original civil action." *Brady*, 66 F.4th at 211.

The Court is persuaded that the findings in this case were regularly made, such that it should treat them as *prima facie* correct. ALJ Andrews reviewed the parties' motions and related exhibits, *see* ECF No. 115-1 at 49–51, held a two-day hearing on the motions with a witness from each party, *id.* at 4, and admitted and considered 25 hearing exhibits (six school exhibits and 19 parent exhibits), *id.* at 51–54. He issued a 45-page ruling with undisputed material facts and conclusions of law.  This process is well within "the accepted norm of a fact-finding process." *Cf. J.P. ex rel. Peterson v. Cnty. Sch. Bd. of Hanover Cnty., Va.*, 516 F.3d 254, 259 (4th Cir. 2008) (finding the decision-making process was ordinary where the hearing officer "by all indications resolved the factual questions in the normal way, without flipping a coin, throwing a dart, or otherwise abdicating his responsibility to decide the case"); *see also G.M.*, 114

16

F.4th at 334–35 (determining that findings were regularly made where the ALJ conducted a hearing where "both sides were allowed to present evidence and arguments" and, later "issued a written decision explaining her determination").

> **2. Upon independent review, the decision that K.F.'s graduation mooted her claim that her IDEA claim was, in part, legally incorrect.**

Taking the ALJ's factual findings as *prima facie* correct, the Court must conduct its own "independent *de novo* review" and reach its own conclusion. *Brady*, 66 F.4th at 211 (quoting *Kirkpatrick v. Lenoir Cnty. Bd. of Edu.*, 216 F.3d 380, 382 (4th Cir. 2000)); *see also S.S. v. Bd. of Educ. of Harford Cnty.*, 498 F. Supp. 3d 761, 776 (D. Md. 2020) (even if the findings are regularly made, "the district court must still make its own independent determination regarding the legal conclusions that have been drawn by the administrative officer").

The Court will begin with Plaintiffs' arguments of legal error. *See* ECF No. 127 at 2 (alleging the ALJ "failed to acknowledge and apply the proper legal standards and conduct proper legal analysis"). Specifically, Plaintiffs contend that the ALJ (1) "applied incorrect legal standards . . . on the law under the IDEA regarding when a school district issues a high school diploma," *id*. ¶ 61; (2) failed to give deference to regulatory guidance, *id*. ¶ 69; and (3) erred in "ruling that there was no relief that could be granted" because a diploma had been issued, *id*. ¶ 94. Defendants argue that the ALJ "reviewed the applicable regulatory provisions and caselaw and applied them to the facts before him." ECF No. 130-1 at 11. There was no legal error as to the first two issues, but the ALJ's determination that the entire complaint was moot based on K.F.'s graduation—not only Plaintiffs' claim that K.F. remained entitled to a FAPE, but also Plaintiffs' claim

for compensatory services based on their claim that K.F. was denied a FAPE before she graduated—was incorrect.

The ALJ applied the correct legal standards in determining that PGCPS had properly issued K.F. a regular high school diploma. Plaintiffs contended at the hearing that to graduate, a student must have "skills that are commensurate with the diploma." ECF No. 115-1 at 40. The ALJ's ruling outlines in detail Maryland's graduation requirements, citing to Maryland regulations throughout. *See, e.g.*, ECF No. 115-1 at 22–23 (citing Md. Code Regs. 13A.03.02.03B) (regulations about required classes); *id.* at 23 (citing Md. Code Regs. 13A.03.02.06) (regulations about MCAP requirements); *id.* (citing Md. Code Regs. 13A.03.02.05) (regulations about community service hours). These regulations, and not Plaintiffs' proposed "commensurate skills" standard, provide the correct legal standard for graduation in Maryland. There was no error as to the legal standard for graduation that the ALJ applied in this case.

Plaintiffs also argue that the ALJ incorrectly failed to give deference to a policy letter from the Office of Special Education Programs (OSEP) of the U.S. Department of Education, which Plaintiffs contend generally bars a summary decision prior to a full due process hearing unless both parties consent. ECF No. 127 ¶ 69. The ALJ considered the letter, but noted it was not binding legal authority, *and* that the letter itself states that policy letters cannot establish a required rule without following rule-making procedures. *See* ECF No. 115-1 at 17, 54; Parent Hearing Exhibit 37 (OSEP letter, not admitted as evidence). In fact, Plaintiffs concede that these authorities are not binding. *See* ECF No. 127 at 26 ("The USDE's own policy guidance issued in 2022 [] *is persuasive authority* when interpreting IDEA and the regulations . . . .") (emphasis added). Neither the ALJ, nor this Court, is required to follow the "informal guidance" of the OSEP letter.

18

*See* Parent Hearing Exhibit 37 (OSEP letter). The ALJ did not err in reviewing, but ultimately declining to admit as evidence or to follow, the letter in reaching a summary decision.

Finally, this Court considers Plaintiffs' contention that K.F.'s graduation did not render moot her claims about the alleged inadequacy of her FAPE. The ALJ was correct in holding that, because K.F. graduated, she was no longer entitled to a FAPE. 34 C.F.R. § 300.102(a)(3). But the Court disagrees with the ALJ's conclusion that, as a matter of law, PGCPS was entitled to summary decision because K.F.'s graduation made the entirety of her due process complaint moot. *See* ECF No. 115-1 at 46. Because Plaintiffs seek compensatory services as one form of relief for Defendants' alleged failure to provide an adequate FAPE, and because claims for compensatory services can be considered even when a school is no longer required to provide a FAPE, Plaintiffs' entitlement to a due process hearing was not rendered moot based on K.F.'s graduation.

Plaintiffs assert that an ALJ can still evaluate IDEA claims that contend that a student was denied a FAPE *prior* to graduation, as well as "the claim that the issuance of the high school diploma was itself a violation of the IDEA." ECF No. 127 at 24–25. Defendants maintain that the ALJ "correctly determined that K.F.'s entitlement to a FAPE ended" when she was awarded her regular high school diploma. ECF No. 130-1 at 11. Analyzing the case law cited by Plaintiffs, ALJ Andrews considered 34 C.F.R. 300.102(a)(3)(i), which provides, "the obligation to make a FAPE available . . . does not apply with respect to . . . [c]hildren with disabilities who have graduated from high school with a regular high school diploma." ECF No. 115-1 at 43. Based on that regulation and cases noted below, he determined that because there was "no question

that when the Complaint was filed, [K.F.] had already graduated," *id.* at 45, Plaintiffs claim challenging the FAPE was moot.

The Fourth Circuit and several other circuits have established that the IDEA allows a student to seek compensatory services for the denial or insufficiency of a FAPE. *See G. ex rel. R.G. v. Fort Bragg Dependent Schs.*, 343 F.3d 295, 308–09 (4th Cir. 2003) (the "IDEA permits an award of such relief [compensatory education] in some circumstances"). "Compensatory education involves discretionary, prospective, injunctive relief crafted by a court to remedy what might be termed an educational deficit created by an educational agency's failure over a given period of time to provide a FAPE to a student." *Id.* at 309; *see also Miller v. Charlotte-Mecklenburg Schs. Bd. of Educ.*, 64 F.4th 569, 574 (4th Cir. 2023) (a district court may award "compensatory education services" as relief under the IDEA).[8]

While a student like K.F. who has graduated is no longer entitled to a free public education after graduation, *see* 34 C.F.R. 300.102(a)(3), that does not mean that such a student can no longer bring an IDEA claim based on a contention that she was denied a FAPE *before* she graduated, when she seeks compensatory services for those alleged pre-graduation deficiencies. *T.S. v. Independent Sch. Dist. No. 54*, 265 F.3d 1090, 1092 (10th Cir. 2001). Compensatory services—"educational services ordered by the court to be provided prospectively to compensate for a past deficient program," *id.* at 308—can be awarded even when the student is no longer eligible for a FAPE, such as when the

---

[8] Compensatory services are distinct from compensatory *damages* awarded in a tort context; compensatory damages are not available for an IDEA violation. *Sellers by Sellers v. Sch. Bd. of the City of Manassas, Va.*, 141 F.3d 524, 526-27 (4th Cir. 1998) ("Tort-like damages are simply inconsistent with IDEA's statutory scheme. . . . [T]he touchstone of IDEA is the actual provision of a free appropriate public education.").

student has aged out or graduated. Here, in addition to seeking relief in the form of

continued provision of a FAPE, Plaintiffs sought compensatory services based on the

claim that K.F. had been denied a FAPE before her graduation. ECF No. 115-1 at 44 (ALJ

explaining, "In this case, the Parent has challenged whether the Student should have

graduated *and seeks compensatory education for alleged FAPE violations*") (emphasis

added); ECF No. 107 ¶ 303 (amended complaint in this court, seeking, among other

things, "compensatory . . . remedies," including the costs of post-graduate programs "to

make student whole," based on Defendants' alleged "fail[ure] to provide a FAPE");

December Amended Complaint at 42 (seeking "compensatory, recovery, declaratory,

and other remedial services to make student whole" for PGCPS's alleged "fail[ure] to

provide a FAPE").

As Judge Legg has explained, "the IDEA empowers courts to grant *compensatory*

education to plaintiffs who are beyond the statutory age of entitlement for special

education services" where doing so would be necessary to "give meaning to a disabled

student's right to an education." *Wagner v. Short*, 63 F. Supp. 2d 672, 676 (D. Md.

1999) (emphasis added). "'Otherwise, school districts simply could stop providing

required services to older teenagers, relying on the Act's time-consuming review process

to protect them from further obligations.'" *Id.* at 676–77 (quoting *Pihl v. Mass. Dep't of

Educ.*, 9 F.3d 184, 189 (1st Cir. 1993)); *see also Johnson*, 20 F.4th at 843 (holding that

Plaintiffs' claim for "prospective, injunctive relief" was moot because the students had

left the district, but their claim for compensatory education, a "backward-looking"

remedy, was not rendered moot simply because they changed districts).

The Fourth Circuit held in *Johnson*, consistent with several other circuits, that "a

claim for compensatory education is not rendered moot simply because the student has

left the defendant school district." 20 F.4th at 843 (collecting cases). The Fourth Circuit has not addressed whether the same distinction applies when a student has graduated. In part, the reasoning in *Johnson* applies squarely when a student has graduated just as when a student has changed school districts. In both contexts, compensatory education is "backward-looking" and constitutes an "equitable remedy addressing a school district's past failure to provide a FAPE." *Id.*

There is a potential distinction, however, between the two contexts (*i.e.*, switching districts vs. graduating). In *Johnson*, the Fourth Circuit explained that part of the reason a claim for compensatory education in the district-switching context should not be rendered moot is that permitting such claims to proceed "holds a school district accountable when its school's failure to comply with the IDEA has *caused a student to withdraw* from that school and to enroll in another school district." *Id.* (emphasis added). Here, Plaintiffs do contend that permitting K.F. to graduate itself constituted an IDEA violation. ECF No. 107 ¶¶ 90, 120. In other words, liberally construed, part of Plaintiffs' claim is that but for Defendants' alleged IDEA violations, she would not have graduated. But the ALJ did not reach the question of whether K.F.'s graduation was an IDEA violation because the ALJ determined as a matter of law that K.F. met all eligibility requirements to graduate. ECF No. 115-1 at 46. Thus, if the sole basis for the Fourth Circuit's decision in *Johnson* was the concern that a school district cannot use an IDEA violation to render a claim moot, then perhaps *Johnson* would not control the question of whether graduation—as opposed to district-switching—renders a claim for compensatory education moot.

But that was not the sole basis for *Johnson*; instead, the thrust of the Fourth Circuit's reasoning was based on the nature of the remedy of compensatory education

itself, as discussed above. Thus, this Court concludes that, under *Johnson*, a claim for "compensatory education"—as opposed to prospective injunctive relief in the form of continued provision of a FAPE—is "not rendered moot" when a student graduates. 20 F.4th at 843. Under a contrary interpretation, "school districts simply could stop providing required services to older teenagers, relying on the Act's time-consuming review process to protect them from further obligations." *Wagner*, 63 F. Supp. 2d at 676-77. That is also the rule that every other circuit of which this Court is aware has adopted. *See Brooks v. D.C.*, 841 F. Supp. 2d 253, 258–59 (D.D.C. 2012) ("numerous . . . Circuits have held that compensatory education may be awarded to disabled students who were denied a FAPE, despite the fact that those students are no longer entitled [IDEA] services") (collecting cases). This does not necessarily mean that a student can assert an IDEA claim and challenge years and years of grievances about disability services, given the IDEA's two-year statute of limitations. 20 U.S.C. § 1415(f)(3)(C) ("A parent or agency shall request an impartial due process hearing within 2 years of the date the parent or agency knew or should have known about the alleged action that forms the basis of the complaint, or, if the State has an explicit time limitation for requesting such a hearing under this subchapter, in such time as the State law allows."); *see also Emery v. Roanoke City Sch. Bd.*, 432 F.3d 294, 300 (4th Cir. 2005) (denying student's request for injunctive relief and noting that the parents "could no longer seek reimbursement for their [educational] expenses because of the applicable statute of limitations"). Rather, *Johnson* narrowly holds that the fact that a student is no longer enrolled in a defendant school district does not, standing alone, render moot a claim for compensatory education services.

With this background in mind, the Court considers the ALJ's ruling. The ALJ considered two cases cited by Plaintiffs in reaching his conclusion that K.F.'s graduation rendered moot her entire FAPE claim, including with respect to backward-looking compensatory education. He first considered *Moseley v. Board of Education of Albuquerque Public Schools*, 483 F.3d 689 (10th Cir. 2007), noting that that court held that a claim that a FAPE was deficient became moot upon a valid graduation. ECF No. 115-1 at 44. But that the student in *Moseley* was not seeking compensatory services. *See Moseley*, 483 F.3d at 694 ("[student] failed to request . . . compensatory education services in his complaint"). So the Tenth Circuit's conclusion that a complaint seeking *only* injunctive relief was rendered moot by the student's subsequent graduation does not mean that Plaintiffs' complaint here, which *did* seek compensatory services, *see, e.g.*, December Amended Complaint at 41 (seeking "compensatory . . . remedies and services to the Student" for failure to provide a FAPE), should likewise be dismissed based on K.F.'s graduation. The ALJ also noted that the operative complaint was filed months after K.F.'s graduation[9] and pointed to language from *Moseley* that "parents may . . . challenge the *proposed graduation* by bringing an action in federal district court," ECF No. 115-1 at 44 (quoting *Moseley*, 483 F.3d at 692 n.6), to reason that K.F.'s actual graduation meant that the complaint in its entirety, including with respect to compensatory education, was moot. *See id.* at 44-45 ("The fact that the graduation is no longer proposed is critical."). But the "proposed graduation" language from *Moseley* was in the specific context of when a school district intends to graduate a student and the

---

[9] As noted above, the original OAH complaint in May 2022, but in late August 2022, Ms. Fisher withdrew that complaint and filed a new due process complaint with PGCPS. She then filed amended complaints in October 2022 and December 2022.

24

parents contest the graduation because they believe "continued education is necessary for the student to receive a FAPE." *Moseley*, 483 F.3d 689, 692 n.6. *Moseley* did not create a general rule that IDEA claims, including for compensatory education, can never survive graduation.

Second, ALJ Andrews considered *T.S. v. Independent School District No. 54*, 265 F.3d 1090 (10th Cir. 2001), in which the Tenth Circuit stated, "[i]f a student has graduated and does not contest his graduation, the case is moot." ECF No. 115-1 at 25 (quoting *T.S.*, 265 F.3d at 1092). The *T.S.* court also explained, however, that that rule applies "only . . . where [a student] is seeking only prospective—rather than compensatory—relief." 265 F.3d at 1092. There, the court described the question of jurisdiction to be a "close question," because the student's claims were "murk[y]," *id.*, and found only "an inkling" of possibility that the student was seeking compensatory relief, *id.*; the court concluded that even presuming he was seeking compensatory relief, the student's claim "would then be denied on the merits" because he did not make out a sufficient substantive allegation that he was deprived a FAPE. *Id.* at 1092-93, 1096. In the present case, there is no such "murkiness" about compensatory relief; it is clear in both the original due process complaint and the federal complaint that Plaintiffs seek compensatory relief for the alleged failure to provide K.F. with a FAPE, including during the period before she graduated. *See, e.g.*, ECF No. 115-1 at 44; ECF No. 107 ¶ 303; December Amended Complaint at 42.

Because K.F.'s graduation did not render moot her claim for compensatory education, it will remand the case to the Maryland OAH for further proceedings with

respect to Plaintiffs' claims that K.F. was denied a FAPE before she graduated and their claim that she should be awarded compensatory education as a result.[10]

### B.    Disqualification of Counsel

Each party has filed a motion to disqualify the other party's counsel. *See* ECF No. 136 (Plaintiffs' motion to disqualify defense counsel); ECF No. 124 (Defendants' motion to disqualify plaintiffs' counsel). For the reasons outlined below, the Court will deny Plaintiffs' motion to disqualify defense counsel. The Court reserves judgment on Defendants' disqualification motion.

A motion for disqualification of counsel requires "a balance between the client's free choice of counsel and the maintenance of the highest ethical and professional standards in the legal community." *Buckley v. Airshield Corp.*, 908 F. Supp. 299, 304 (D. Md. 1995) (quoting *Tessier v. Plastic Surgery Specialists, Inc.*, 731 F. Supp. 724, 729 (E.D. Va. 1990)). The moving party "bears a high standard of proof to show disqualification is warranted." *Id.* (quoting *Tessier*, 731 F. Supp. at 729). This Court applies the Maryland Rules of Professional Conduct. *See* Local Rule 704.

Plaintiffs argue that Defendants' attorney, Jeffrey Krew, should be disqualified as counsel based on allegations of (1) an actual or potential conflict of interest, (2)

---

[10] Upon remand, there may be other limitations on Plaintiffs' claims that the ALJ did not reach in light of the ALJ's summary decision. For example, as noted above, the IDEA includes a general two-year statute of limitations. 20 U.S.C. § 1415 (b)(6)(B) (requiring an opportunity to bring a complaint for "an alleged violation that occurred not more than 2 years before the date the parent or public agency knew or should have known about the alleged action"). The complaint challenges actions reaching back far longer than two years. *See* ECF No. 107 ¶ 79 ("Student's Complaint raises allegations of FAPE violations dating back to 2nd grade"). The Court's decision here does not preclude the possibility that, upon remand, Plaintiffs' claim for compensatory services may be narrowed, dismissed, or denied on a different basis.

misconduct, (3) alleged assistance to a client in engaging in criminal conduct or fraud, (4) the possibility that Mr. Krew will need to serve as a witness, (5) harassment on protected bases, and (6) violations of Maryland's Rules of Professional Conduct governing an attorney's role as an advocate.  ECF No. 136 ¶¶ 11, 13.

The core of several of these arguments is the allegation that Mr. Krew wrongly (and, according to Plaintiffs, illegally) sent certain confidential student records to the OAH and this Court in connection with this case. ECF No. 136 ¶¶ 19, 20. Although Plaintiffs do not specify which record(s) they contend were improperly shared, the Court notes that Plaintiffs filed a Motion for a Protective Order and Sanctions related to two documents. *See* ECF No. 138; *see also* ECF No. 141 (sealing those documents but reserving ruling on the remainder of the motion). These actions are the basis for Plaintiffs' arguments that defense counsel has engaged in misconduct, assisted a client in engaging in criminal conduct or fraud, and has a potential or actual conflict of interest. *See, e.g.*, ECF No. 136 ¶¶ 19, 20. Defendants argue that "any alleged release of documents was protected in the context of administrative or judicial proceedings." ECF No. 140 at 4. Defendants also argue generally that Mr. Krew has "serve[d] as an advocate within the bounds of the law for his client" and that the motion to disqualify contains only "unsupported, conclusory statements." *Id.* at 2, 3.

Regarding Plaintiffs' argument that defense counsel's filing of confidential documents constituted misconduct, Plaintiffs state only that Ms. Fisher has "contacted many officials" in Maryland, including the Attorney General and the Prince George's County Commissioner's Office, "to file formal criminal charges against Mr. Krew and the Defendants" based on the documents' disclosure. ECF No. 136 ¶ 20. They do not contend that any of the entities has brought charges or found these charges meritorious.

*See* Md. Rule 19-308.4(b) ("It is professional misconduct for an attorney to . . . commit a criminal act that reflects adversely on the attorney's honesty, trustworthiness or fitness as an attorney."). Plaintiffs' allegation that documents were wrongly shared and their desire to file formal charges is not enough to establish that disqualification based on misconduct is merited. Likewise, Plaintiffs have come nowhere close to establishing that Mr. Krew has assisted his clients in furthering fraud or a crime.

Regarding Plaintiffs' contention that "Mr. Krew will not be able to represent his own interests and his clients['] without conflict" based on future criminal or disciplinary proceedings, such a determination is speculative and premature in light of the fact that any such proceedings are merely hypothetical. There is no "significant risk" that defense counsel's representation "will be materially limited by . . . [his] personal interest." *See* Md. Rules 19-301.7(a)(2). And even under such circumstances, representation might still be permitted with Defendants' informed consent. *See id*. 19-301.7(b)(4). These unsubstantiated allegations of a potential future conflict of interest do not support disqualification.

Plaintiffs also seek disqualification because they intend to call Mr. Krew as a witness in some future proceeding as to "their IDEA and non-IDEA claims." ECF No. 136 ¶ 12. The Maryland Rules provide: "An attorney shall not act as advocate at a trial in which the attorney is likely to be a necessary witness." Md. Rules 19-303.7(a). There is nothing in the record to indicate Mr. Krew is "likely to be a necessary witness" in a future proceeding, particularly about Plaintiffs' non-IDEA claims because the events of those claims occurred approximately 10 years prior to Mr. Krew's involvement in this case. The Court will not disqualify Mr. Krew on this basis either.

Plaintiffs also allege that Mr. Krew has engaged in harassment based on "protected bases, including disabilities." ECF No. 136 ¶ 13. Plaintiffs only make general allegations of harassment, and do not point to any specific instances of harassment. *See, e.g.*, *id.* (defense counsel "is perpetually making harassing statements about [Ms. Fisher] and her disabilities and health conditions"). It is Plaintiffs' burden, as the movant, to establish that disqualification is warranted, but they have failed to provide sufficient evidence to support disqualification on this basis.

Finally, Plaintiffs suggest generally that defense counsel has violated Maryland Rules 19-303.1 through 19-303.5. ECF No. 136 ¶ 11. These rules relate to an attorney's role as advocate, including obligations to bring meritorious claims, make reasonable efforts to expedite litigation, engage with candor towards the tribunal, treat the opposing party and counsel with fairness to the opposing party, and respect the impartiality and decorum of the tribunal. *See* Md. Rules 19-303.1 through 19-303.5. Plaintiffs offer some examples of actions that they allege are violations of these rules (*e.g.*, "testify[ing] in filings" about K.F.'s situation "without proper affidavits," ECF No. 136 ¶ 14; "making material omissions/representations," *id.* ¶ 18, "failing to reach out to [Ms. Fisher] before" filing new motions," *id.* ¶ 23). Other actions, such as Defendants' decision to proceed to discovery on the non-IDEA claims rather than file a motion to dismiss them is an acceptable litigation strategy and, in fact, one explicitly permitted by this Court. *See* ECF No. 115 at 9 ("[W]hether discovery will proceed" on the non-IDEA claims "will depend on whether Defendants file a motion to dismiss those claims. . . . If such a motion is not filed, the Court will set a schedule for discovery on those claims."). There is no factual support for Plaintiffs' contention that the "main purpose" of Defendants' decision is to "disparage [Plaintiffs] and prejudice the Court with their

inflammatory and inaccurate rhetoric." ECF No. 136 ¶ 3. Again, there is not enough factual support here to establish that Mr. Krew has violated any of the Maryland Rules, or that any such violation rises to the level justifying disqualification.

Because Plaintiffs have not met the "high standard of proof" to show the disqualification of Mr. Krew is warranted, *Buckley*, 908 F. Supp. at 304, the Court will deny Plaintiffs' motion.

## IV.    CONCLUSION

For the reasons stated above, Defendants' motion to dismiss based on Plaintiffs' failure to comply with the briefing schedule, ECF No. 118, will be denied. The parties' motions for summary judgment on Plaintiffs' IDEA claims, ECF Nos. 127 & 130, will each be granted in part and denied in part; the ALJ's findings of fact were regularly made, and his conclusions of law were legally correct, with the sole exception that Plaintiffs' claim for compensatory services based on an alleged failure to provide a FAPE before K.F.'s graduation was not rendered moot by her graduation and thus will be remanded to the OAH for further proceedings consistent with this proceeding. An appropriate order follows.

Date:  August 21, 2025                    _____/s/_____
                                          Adam B. Abelson
                                          United States District Judge